FILED
SUPERIOR COURT
OF GUAM

2026 JUN 30 PM 12: 14

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **FHP HEALTH CENTER,** | **CIVIL CASE NO. CV0624-25** |
| Plaintiff, | |
| vs. | |
| **GOVERNMENT OF GUAM, LOURDES A. LEON GUERRERO Måga Håga in Her Capacity as the Governor of Guam, and the DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES,** | **DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GOVERNMENT OF GUAM'S MOTION TO DISMISS** |
| Defendants. | |

This matter came before the Honorable Dana A. Gutierrez on the Government's Motion to Dismiss under Rule 12(b)(6) of the Guam Rules of Civil Procedure ("GRCP") on April 2, 2026. Appearing on behalf of Plaintiff FHP Health Center ("FHP") was Attorney George Valdes. Assistant Attorney General Staci Anderson from the Office of the Attorney General appeared after the hearing had commenced and informed the Court that the Government of Guam ("Government") would rest on its briefing and present no further argument.[1] At the conclusion of the hearing, the Court took the matter under advisement. *See* Min. Entry at 10:44:35 A.M. (Apr. 2, 2026). The Court now issues this Decision and Order.

---

[1] At the Motion Hearing, the Court asked counsel from the Office of the Attorney General to clarify who their office represents in this case. *See* Min. Entry at 10:40:56 A.M. (Apr. 2, 2026). The Court directed counsel to submit a declaration to clarify this issue. To date, the Government has not filed any declaration to clarify this issue.

## BACKGROUND

FHP owns and operates a healthcare center in Guam. Complaint For Inverse Condemnation, Breach of Contract, Promissory Estoppel, and Compensation under the Islan Guåhan Emergency Health Powers Act ("Compl.") at ¶ 2 (Sep. 25, 2025). On March 14, 2020, in response to the emergence and spread of the 2019 novel coronavirus disease ("COVID-19"), the Governor of Guam declared a public health emergency for the island. Compl. ¶ 8. On March 24, 2020, the Governor issued Executive Order No. 2020-06 ("Executive Order"). *Id* at ¶ 10. The Executive Order recognized the need for Guam's public and private medical facilities to coordinate in order to provide access to care, preserve medical resources, and facilitate efficiencies in responding to COVID-19. *Id* at ¶¶ 10–11. The Executive Order further stated that Guam's health system had to prepare and transform to respond to community spread of COVID-19 on the island. *Id* at ¶ 11. The Executive Order created the COVID-19 Unified Response Effort Action Team, also referred to as the "CURE Action Team." *Id* at ¶ 10. The CURE Action Team was created as the authority regarding the appropriate medical response to the COVID-19 pandemic. *Id* at ¶ 12.

The Executive Order directed the use of healthcare facilities throughout Guam in connection with the pandemic response "as instructed by the CURE Action Team." *Id* at ¶ 13. Specifically, the Order provided that, as a condition of business licensure, healthcare facilities throughout Guam were directed to comply with the Executive Order. *Id* at ¶ 14. The Executive Order states that participating clinics "shall be reimbursed or billed at a rate set forth in memoranda of understanding or such other standardized, uniform rate as developed by the CURE Action Team." Plaintiff FHP Health Center's Opp'n to Motion to Dismiss Under Rule 12 (b)(6) GRCP ("Opp'n") at 16 (citing Executive Order) (Dec. 22, 2025).

2

During the COVID-19 response, Plaintiff was designated as a "Tier 2" medical clinic. Compl. ¶¶ 20–21. Plaintiff alleges that, as a Tier 2 clinic, it was directed to provide public health services related to COVID-19, including services for persons who had or were suspected of having COVID-19. *Id* at ¶¶ 21. Plaintiff also alleges that it hired, supervised, and compensated physicians, staff, and nurses, and maintained medical records for patients who received treatment at its facility. *Id* at ¶¶ 23–24. According to the Complaint, Plaintiff used its facility, personnel, medical supplies, and other resources in connection with the COVID-19 response from March 24, 2020, through a date no later than January 5, 2023. *Id* at ¶ 30. FHP alleges that the "Government of Guam has failed and refused to justly compensate FHP" for the utilization of its resources and manpower. *See Id* at ¶ 35.[2]

Plaintiff filed this civil action against the Government of Guam, the Governor of Guam in her official capacity, and the Department of Public Health and Social Services. *Id* at ¶¶ 2–5.[3] The Complaint asserts claims for inverse condemnation, compensation under the Islan Guåhan Emergency Health Powers Act, breach of contract, and promissory estoppel. *Id* at ¶¶ 29–70. On November 24, 2025, the Government moved to dismiss the Complaint under GRCP Rule 12(b)(6). Mot. And Mem. in Supp. of Mot. to Dismiss under Rule 12(b)(6) GRCP ("Gov't Mot.") at 1 (Nov 24, 2025). On December 22, 2025, FHP filed an opposition to the motion and requested leave to amend the Complaint, if necessary. Opp'n at 1. The Government did not file any reply.

---

[2] The Complaint states that "Defendant Government of Guam remitted $750,000.00 to FHP through the Healthcare Stabilization Grant program but that amount is not just compensation for the costs of the government mandated public health services and supplies for public use." *See* Compl. at ¶ 39. At the Motion Hearing, FHP clarified that this grant funding was "paid to all Tier 1 and Tier 2 clinics" and not just FHP.

[3] At the Motion Hearing, the Court requested counsel for FHP to file declarations showing service of process on the Defendants in this matter. FHP has so complied. *See* Decl. of Service (Gov. of Guam) (Apr. 3, 2026); Decl. of Service (Dept. of Public Health and Social Services) (Apr. 3, 2026); Decl. of Service (Governor of Guam) (Apr. 3, 2026).

## DISCUSSION

### I.     Legal Standard

#### A.     Motion to Dismiss

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Guam R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). "Dismissal for failure to state a claim is appropriate only 'if it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief.'" *Taitano v. Calvo Fin. Corp.*, 2009 Guam 9 ¶ 6 (citation omitted) (alteration in original). On a motion to dismiss, the Court "must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'" *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 11 (citation omitted). Dismissal under Rule 12(b)(6) is "disfavored and rarely granted." *See Deluca v. Massachusetts Mut. Life Ins. Co.*, 2005 WL 1562033, at *2 (E.D. Cal. June 28, 2005); *Hart v. Gaione*, 2006 WL 1431480, at *2 (C.D. Cal. May 18, 2006) ("A dismissal under Federal Rule of Civil Procedure 12(b)(6) is a disfavored remedy and is appropriate 'only in extraordinary cases.'") (citing *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981)).[4]

#### B.     Request for Leave to Amend

"[L]eave to amend should always be liberally granted." *Arashi & Co. v. Nakashima Enters., Inc.*, 2005 Guam 21 ¶ 16 (citing *Foman v. Davis*, 371 U.S. 178 (1962)). Nevertheless, a court must "review whether certain factors are present which may mitigate against leave to amend." *Id.* Such

---

[4] "[B]ecause the Guam Rules of Civil Procedure are generally derived from, although not identical to, the Federal Rules of Civil Procedure . . ., federal decisions that construe the federal counterparts to the [GRCP] are persuasive authority." *Portis Int'l, LLC v. Marquardt*, 2018 Guam 22 ¶ 7 n.1 (citation omitted) (alteration in original).

4

factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* (alteration in original).

## II.    Inverse Condemnation Claim

Under the Takings Clause of the Fifth Amendment to the United States Constitution, a property owner may assert an inverse condemnation claim when government action amounts to a taking of private property without formal condemnation and without just compensation. *Cepeda v. Gov't of Guam*, 2005 Guam 11 ¶ 21 ("[A]n 'inverse' or 'reverse' condemnation proceeding arises from the landowner's attempt to receive compensation for a taking of property for public purposes when the government has not brought formal condemnation proceedings.") (citation omitted); *D.A. Realestate Inv., LLC v. City of Norfolk*, 126 F.4th 309, 316 (4th Cir. 2025) ("If a government takes property *without* condemnation proceedings or just compensation, a property owner can bring an 'inverse condemnation' action for just compensation.") (citing *United States v. Clarke*, 445 U.S. 253, 257 (1980)) (emphasis in original). "The Supreme Court [of the United States] has generally recognized two types of takings. The first is the 'paradigmatic taking'—often referred to as a 'physical taking' or 'classic taking'—where the government directly appropriates or physically invades private property . . . . The second type of taking is where government regulation of private property may 'be so onerous that its effect is tantamount to a direct appropriation or ouster.'" *Peinhopf v. Guerrero*, 2021 WL 218721, at *4 (D. Guam Jan. 21, 2021) (citations omitted); *see also Gutierrez v. Guam Power Auth.*, 2013 Guam 1 ¶ 35 ("The [U.S.] Supreme Court has recognized that the government may 'take' private property by either physical occupation or

5

regulation, and that these two categories of takings are subject to different analyses.") (citation and quotation omitted) (alteration in original).

### A.   Plaintiff Has Sufficiently Pled an Inverse Condemnation Claim under the Theory of Regulatory Taking under *Penn Central*

A regulatory taking occurs when government regulation restricts the owner's use of property so severely that compensation is required. *See In re: Santa Clarita, LLC*, 2023 WL 6194159, at *5 (C.D. Cal. Aug. 21, 2023) (Regulatory taking occurs when "the government 'imposes regulations that restrict an owner's ability to use his own property.'") (citation omitted). In determining whether a regulation rises to the level of regulatory taking, courts apply the fact-specific *Penn Central* framework, considering "(1) '[t]he economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation [interferes] with distinct investment-backed expectations,' and (3) 'the character of the government action.'" *See Hotop v. City of San Jose*, 982 F.3d 710, 716 (9th Cir. 2020) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)). The Court will examine the parties' position regarding each *Penn Central* factor below.

Plaintiff argues that the Executive Order effected a regulatory taking because the economic impact was severe, including closure of routine operations by Plaintiff, increased hours and staffing, build-outs for quarantine and social-distancing infrastructure, and uncompensated vaccination and testing. *See* Opp'n at 13. Plaintiff further argues that the investment-backed expectations of a private outpatient clinic were upended by the "complete surprise" of the COVID-19 pandemic and "the resulting executive orders and mandates." *See id.* Lastly, Plaintiff contends that the character of the government action went "too far" because the "executive orders and

6

mandates . . . deprived FHP of all economically beneficial use of its services, supplies, and facilities." *See id.* at 14.

The Government argues that "adverse economic impact [is] 'not dispositive.'" *See* Gov't Mot. at 12 (citing *Englewood Hosp. & Med. Ctr. v. State*, 261 N.J. 195, 223 (July 17, 2025)). As to the second factor, the Government contends that "the arrival of COVID-19 in the Spring of 2020 was no surprise to the Guam Legislature, and should not have been a surprise to those investing in medical clinics on Guam" given the fact that the Legislature passed into law the Islan Guåhan Emergency Health Powers Act in 2003. *See id.* at 12–13. Lastly, the Government contends that the character of the government action "strongly favors finding no constitutional 'regulatory' taking" because of the "paramount public interest" in responding to COVID-19. *See id.* at 14–15 (citing *Englewood*, 261 N.J. at 228–29).

"The first factor analyzes how the regulation affects the value of the property and the financial burden incurred by the property owner." *Helbling v. Pebbles*, 2025 WL 2653577, at *8 (W.D. Pa. Sept. 16, 2025). "The economic impact factor generally requires substantial diminution in property value or evident economic harm to support a takings claim, rather than speculative or minor losses." *Id.* As to the second factor, "the question we ask is whether [the] plaintiff[] reasonably could have anticipated that their property interests might be adversely affected by Government action." *Abrahim-Youri v. United States*, 36 Fed. Cl. 482, 486 (Fed. Cir. 1996). Lastly, the third factor examines "whether [the government regulation] amounts to a physical invasion or appropriation of property or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." *Greenport Gardens, LLC v. Vill. of Greenport*, 2021 WL 4480551, at *11 (E.D.N.Y. Sept. 30, 2021) (citation

7

and quotation omitted). In weighing these factors, the Court bears in mind "[t]he [U.S.] Supreme Court [has] stressed that the first two *Penn Central* factors are the most important." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 454 n.9 (9th Cir. 2018) (citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39 (2005)). Ultimately, "[t]he *Penn Central* test is driven by justice and fairness, and the outcome depends largely upon the particular circumstances of the case." *Hinkle Fam. Fun Ctr., LLC v. Grisham*, 586 F. Supp. 3d 1118, 1131–32 (D.N.M. 2022).

In this case, the Court finds that Plaintiff has sufficiently pled a regulatory taking. Plaintiff alleges that the government mandates fundamentally altered the operation of its medical facility by directing Plaintiff, as a designated Tier 2 clinic, to shut down its normal business operations and routine clinical work and instead triage and treat suspected COVID-19 patients for public use. *See* Compl. at ¶17 (Plaintiff was directed by the CURE Action Team "to triage patients who were suspected to have COVID, provide medical urgent care, shut down its normal business operations and routine clinical work."). Plaintiff further alleges that the mandates imposed uncompensated obligations that significantly impaired its ability to use its property for normal business purposes, including the requirement that it accept all COVID-related patients "without consideration of any ability to pay," "hire, supervise[,] and compensate" all personnel needed to fulfill government-mandated public health services, and incur substantial operating expenses "to comply with the government mandates, executive orders, and directives by the CURE Action Team" without reimbursement. Compl. at ¶¶19, 23, 25. Next, the Executive Order clearly disrupted FHP's reasonable investment-backed expectations because "no reasonable person would have anticipated the COVID-19 pandemic." *See Ryan v. Nagy*, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25,

8

2021).[5] Finally, Plaintiff asserts that the government action was extraordinary in scope and character, compelling the temporary conversion of its private medical clinic into a public response facility for government-mandated public health services throughout the emergency period. Compl. at ¶ 21 ("FHP was temporarily converted to provide government mandated public health services to all persons with suspected COVID, treat those patients, and provide vaccinations for COVID . . ."). Taking these allegations as true at the pleading stage, Plaintiff has set forth sufficient factual matter to state a plausible claim for regulatory taking. The Government's Motion is therefore **DENIED** as to this claim.

### B. The Plaintiff Has Not Sufficiently Pled an Inverse Condemnation Claim under the Theory of Physical Taking

The Government contends that a physical taking occurs in two circumstances: (1) through "physical appropriation," which happens "when the government directly takes private property for its own use," either by exercising its power of eminent domain "to formally condemn property" or by "physically ta[king] possession of property," or (2) "when there is a government authorized physical invasion or a physical occupation of private property." *See* Gov't Mot. at 4 (citing *Englewood*, 261 N.J. at 213–14). Since there was no such physical appropriation or physical invasion authorized by the government in this case, the Government argues that FHP has failed to state a claim of physical taking. *See* Gov't Mot. at 8.

FHP's position is that the Executive Order "required full and complete compliance with any protocols issued by the Government and FHP's health care supplies were subject to control by

---

[5] At the motion hearing, FHP also emphasized that it was established well before the enactment of the Islan Guåhan Emergency Health Powers Act; thus, its founding investors could not reasonably have anticipated that the Government would later exercise emergency powers under this law to direct the use of FHP's facilities.

the Government" such that "FHP did not retain ownership and control of its staff, facilities, and supplies." *See* Opp'n at 12. FHP further contends that because "FHP had to provide urgent care as needed and determined by the CURE Action Team and the Governor," FHP suffered from "the loss of operational and management control over its facilities and staff." *See id.*

"A physical taking is the 'paradigmatic taking' and occurs by 'a direct government appropriation or [a] physical invasion of private property.'" *Orr v. United States*, 145 Fed. Cl. 140, 150 n.3 (2019); *see also EklecCo NewCo LLC v. Town of Clarkstown*, 2018 WL 3023159, at *8 (S.D.N.Y. June 18, 2018) ("Physical takings involve 'the direct government appropriation or physical invasion of private property.'").

Here, there was neither direct government appropriation of FHP's property nor a physical invasion of FHP's facilities. FHP's own pleadings show it remained in possession and operating control throughout the emergency. The Complaint alleges that FHP itself maintained all licensure and certification requirements, *see* Compl. at ¶ 22, hired, supervised, and compensated its physicians, nurses, and staff, *see id.* at ¶ 23, and established and maintained all patient medical records, *see id.* at ¶ 24, with no allegation that government personnel occupied or displaced FHP from its premises. The measures FHP challenges were imposed through licensing conditions and enforcement threats—fines and potential termination of business licenses—rather than through any government physical appropriation or physical invasion. For that reason, the Court finds that FHP has not sufficiently pled a claim for taking under the physical taking theory. Because an amendment to the Complaint could allege a physical appropriation or invasion, the Court concludes that amendment would not be futile and therefore **GRANTS** FHP's request for leave to amend its inverse condemnation claim under the physical taking theory.

10

### III. Compensation under the Islan Guåhan Emergency Health Power Act

Pursuant to the Islan Guåhan Emergency Health Power Act, FHP contends that it "is entitled to no less than the fair market value for the use and occupancy FHP [*sic*], fair market value of the medical services and personnel costs, and the fair market value of the medical supplies for government mandated public health services between March 24, 2020 through a date no later than January 5, 2023, plus interest." *See* Compl. at ¶ 70.

The Government argues that because no taking occurred, FHP cannot qualify for "payment of compensation for supplies, services, and facilities" that were "lawfully taken," citing 10 GCA §§ 19506 and 19805. Gov't Mot. at 16–17. This argument fails. As the Court has already determined that FHP has adequately stated a claim for inverse condemnation under the theory of regulatory taking and has denied the Government's Motion as to that claim, the predicate for the Government's position no longer exists. Once a plausible taking has been alleged, the statutory compensation provisions of the Islan Guåhan Emergency Health Powers Act are necessarily triggered, as the Act expressly authorizes just compensation where private facilities, materials, or services were "lawfully taken." Because FHP's inverse condemnation claim survives dismissal, FHP remains legally entitled to seek compensation under the Act. Accordingly, the Government's Motion is **DENIED** with respect to this claim.

### IV. Breach of Contract

The Government argues that a valid contract was not formed between the Government and FHP because there was no "voluntary meeting of the minds," which is "the hallmark of an express contract." *See* Gov't Mot. at 17. The Government further contends that no implied contract existed because an essential element of contract formation, mutual assent, was absent. *See* Gov't Mot. at

11

17–18 (citing *Ata Mazaheri, M.D., Inc. v. UnitedHealthcare Ins. Co. Inc.*, 2023 WL 5167362, at *3 (C.D. Cal. July 10, 2023)).

FHP argues that "a valid implied contract" arose between it and the Government of Guam based on the Executive Order, which expressly required participating clinics to provide mandated COVID-19 services with a promise of reimbursement at rates to be established by the CURE Action Team. *See* Opp'n at 17–18. FHP claims that by complying with the mandatory directives—treating all COVID-19 patients, following government-controlled protocols, maintaining staffing and operations, and giving up ordinary business functions—FHP consented to the "terms of the contract." *See id.* at 18. FHP further asserts that the Government breached this implied contract by failing to provide the promised just compensation or reimbursement, despite FHP fully performing the services required under the Executive Order. *See id.*

The Court is not convinced by FHP's argument. FHP asserts that an implied contract arose from Executive Order, arguing that the Executive Order's language regarding reimbursement, together with FHP's compliance with the directives to provide COVID-19-related services, manifested mutual assent. However, an implied contract requires conduct demonstrating a voluntary meeting of the minds. *See, e.g., Berlanga v. Univ. of San Francisco*, 100 Cal. App. 5th 75, 82, 318 Cal. Rptr. 3d 782, 788 (Cal. Ct. App. 2024) ("[B]oth [express contract and implied] contract are identical in that they require a meeting of minds or an agreement."); *Sackett v. Starr*, 95 Cal. App. 2d 128, 133, 212 P.2d 535, 538 (Cal. Ct. App. 1949) ("Mutual consent is necessary to the existence of any contract, and one cannot be made to stand on a contract to which he never consented."). Here, the Complaint itself makes clear that FHP acted pursuant to mandatory directives issued under the Governor's emergency authority, and that noncompliance could result

in fines or termination of licensure. Compliance with a command of law cannot constitute consent required to form a contract. *See James D.J. JI v. Toves*, 2020 Guam 2 ¶ 9 ("For consent to a contract to be considered valid, it must be freely given, mutual, and communicated by each party to the other.") (citing 18 GCA § 85301); *Cox v. Schnerr*, 172 Cal. 371, 376, 156 P. 509, 512 (Cal. 1916) ("Free consent is an indispensable element in the making of a valid contract."). The Executive Order is an exercise of the Government's power, not a contractual offer capable of acceptance, and the Court finds no factual allegations suggesting voluntary agreement between the parties.

Because FHP's allegations do not plausibly establish a valid contract, the Complaint fails to state a claim for breach of contract. Moreover, the Court finds that granting leave to amend would be futile. The deficiency in FHP's contract theory is due to the legal impossibility of converting an executive order into a voluntary contractual undertaking. For that reason, the Motion is **GRANTED** as to the breach of contract claim and leave to amend is **DENIED**.

## V. Promissory Estoppel

With respect to Plaintiff's promissory estoppel claim, the Government contends that "there is no clear and unambiguous promise on the part of the Government of Guam to reimburse FHP for supplies, personnel, and facilities utilized during the Pandemic." *See* Gov't Mot. at 18. Without legal authority, the Government asserts that FHP "must be identified by *name* for promissory estoppel to operate." *See id.* at 19–20 (emphasis in original).

FHP argues that it has sufficiently pled a promissory estoppel claim as an alternative theory should the court find no valid contract existed. *See* Opp'n at 18. According to FHP, the Executive Order contained a clear and unambiguous promise that participating clinics, including FHP, would be "justly compensated for the Governments [*sic*] taking and use of its facilities, supplies, and

13

services." *See id.* at 18–19. FHP further emphasizes that it has "reasonably and foreseeably relied upon the Government's promise and complied with the mandates of Executive Order 2020-06 to its detriment." *See id.* at 18. Taken together, FHP argues that it has sufficiently pled a claim of promissory estoppel.

"Promissory estoppel requires the following: (1) a promise that is clear and unambiguous in its terms; (2) reliance by a party to whom the promise is made; (3) reliance that is both reasonable and foreseeable; and (4) the party asserting estoppel must be injured by its reliance." *ST Corporation v. Lopez*, Civil Case No. CV0905-18 (Decision and Order (Plaintiff ST Corporation's Mot. for Summ. J.) at 8 (Jun. 3, 2019)) (citing *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 227 (2011)); *see also Peter, et al. v. Gill, et al.*, Civil Case No. CV0426-18 (Decision and Order Re Defendants' Motion for Partial Summ. J. at 11 (Oct. 3, 2019)) ("Where one party makes a promise and a second party acts in reasonable and detrimental reliance on that promise, the first party's promise may be enforced even in the absence of a complete contract.") (citing *Hass v. Darigold Dairy Prods., Inc.*, 751 F.2d 1096, 1100 (9th Cir. 1985)).

FHP's allegations suffice at the pleading stage. First, the Executive Order contains a clear and unambiguous reimbursement assurance: health care clinics directed to provide the mandated services are "reimbursed or billed" at standardized rates, which on its face promises payment to participating clinics such as FHP. Second, FHP alleges it relied on that assurance by restructuring operations, accepting all COVID-related patients, maintaining licensure requirements, staffing up, and providing services and supplies under the Government's directives. Third, that reliance was reasonable and foreseeable because the Executive Order conditioned continued licensure and operation on compliance, threatened fines or license termination for non-compliance, and

14

expressly tied mandated participation to reimbursement—facts that would naturally induce clinics to act in accordance with the Government's directives. Fourth, FHP pleads injury in the form of unreimbursed costs and expenses incurred while performing those mandated services, including closure of ordinary business operations and diversion of private resources to public use. Taken together, these well-pleaded facts plausibly satisfy all four elements of promissory estoppel under Guam law, and the claim should not be dismissed under Rule 12(b)(6).

The Court is not convinced by the Government's contention that there lacks a "clear and unambiguous promise on the part of the Government of Guam to reimburse FHP for supplies, personnel, and facilities utilized during the Pandemic." *See* Gov't Mot. at 18. The Government's own Executive Order contradicts this position. The Executive Order states "healthcare clinics . . . are directed to provide such necessary health care services as instructed by CURE Action Team," and "[s]uch participating clinics shall be reimbursed or billed at a rate set forth in memoranda of understanding or such other standardized, uniform rate as developed by the CURE Action Team." *See* Opp'n at 16 (citing Executive Order).

The Court further finds unpersuasive the Government's contention that FHP must be identified by name in the Executive Order in order for the promissory estoppel doctrine to apply. This argument attempts to improperly narrow the scope of the promissory estoppel doctrine. What matters under the promissory estoppel doctrine is that "the defendant made a promise that was clear and unambiguous as to its terms," not whether the promisee is singled out by name. *See Bernard & Bernard v. Wells Fargo Bank, N.A.*, 2021 WL 4353248, at *3 (C.D. Cal. Aug. 11, 2021) (citing *ACP, Inc. v. Skypatrol, LLC*, 639 F. App'x. 493, 495 (9th Cir. 2016)). Here, the Executive Order expressly assures that "health care clinics" directed to provide CURE-mandated services

"shall be reimbursed or billed at a rate set forth in memoranda of understanding or such other standardized, uniform rate as developed by the CURE Action Team," and FHP plausibly alleges it is one such participating clinic. Accordingly, the Court **DENIES** the Government's Motion to Dismiss as to the promissory estoppel claim.

## CONCLUSION

For the above reasons, the Court hereby **GRANTS** the Government's Motion as to the breach of contract claim and **DENIES** the Government's Motion as to all other claims. The Court further **GRANTS** FHP leave to amend its inverse condemnation claim under the physical taking theory and **DENIES** FHP leave to amend other claims. FHP shall file any amended complaint within thirty (30) days of the entry of this Decision and Order.

**SO ORDERED** this 30th day of June, 2026.

HONORABLE DANA A. GUTIERREZ
Judge, Superior Court of Guam